## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**DENNIS MARIO RIVERA**,

    Plaintiff,

    v.                                          Civil No. 11-1530 (BJM)

**MÉNDEZ & COMPAÑIA**, *et al.*,

    Defendants.

### OPINION AND ORDER

In an amended complaint, Dennis Mario Rivera sued Méndez & Compañia ("Méndez"), HNK Americas, Luis Álvarez, Triple-S Propiedad, Inc. and others, alleging copyright infringement.  Docket No. 83 ("Compl.").  The parties have consented to proceed before a magistrate judge.  Docket No. 107.  Before the court is plaintiff's motion for summary judgment and defendants' motion for partial summary judgment. Docket Nos. 120, 121 ("Pl. Mot."), 124 ("Def. Mot."), 125.  Each side has opposed the other, and plaintiff additionally submitted a reply.  Docket Nos. 128, 132, 148.  In light of the findings of fact and legal discussion set forth below, plaintiff's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**, and defendants' motion for partial summary judgment is **DENIED**.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).  The court does not weigh facts, but instead ascertains whether the "evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

The movant must first "inform[] the district court of the basis for its motion," and identify the record materials "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); R. 56(c)(1). If this threshold is met, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not prevail with mere "conclusory allegations, improbable inferences, and unsupported speculation" for any element of the claim. *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Still, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," *Leary*, 58 F.3d at 751, and the court must not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." *Greenburg v. P.R. Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

## BACKGROUND

This summary of the facts is guided by the parties' Local Rule 56 statements of uncontested facts. *See* Docket Nos. 120 ("Pl. SUF"), 125 ("Def. SUF"), 131, 133, 149.[1]

Dennis Mario Rivera is an artist of more than 30 years based in Puerto Rico. Méndez & Compañia is a Puerto Rico company that serves as the exclusive distributor of Heineken beer in Puerto Rico, and sponsors the annual Puerto Rico Heineken Jazz Fest

---

[1] Local Rule 56 requires parties at summary judgment to supply brief, numbered statements of facts, supported by citations to admissible evidence. It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," *CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008), and prevents litigants from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." *Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007). The rule "permits the district court to treat the moving party's statement of facts as uncontested" when not properly opposed, and litigants ignore it "at their peril." *Id.*

("PRHJF").  Luis Álvarez is a Vice President at Méndez and the Executive Producer of
PRHJF.  Pl. SUF ¶¶ 1–5.  The Puerto Rico Heineken Jazz Fest is a music festival,
established in 1991, and which raises funds for students of the Berklee College of Music.
Def. SUF ¶ 1.

Sometime before the 1998 festival, Méndez approached Rivera and commissioned
him to create a visual design that included the Heineken logo and featured that year's
artist, to be used in various promotional and marketing materials (posters, t-shirts, bus
shelters, etc.) for the 1998 PRHJF.  Compl. ¶¶ 16–17; Def. SUF ¶¶ 2–3.  For each festival
starting in 1998 through 2009, Rivera created one such design (for a total of twelve
pieces).  Pl. SUF ¶ 10.  Rivera was given a significant amount of artistic freedom to
create these works.  *Id.* ¶¶ 100–02, 104.  Upon completion of each piece, Rivera would
deliver to Méndez the original work, framed, and the work in a digital format on a disk.
Def. SUF ¶ 7.  For each piece, he charged Méndez $5000 for the original artwork, $4000
for "logo design," and an additional sum for the original's framing.  *See, e.g.*, Docket No.
125-8, at 10–18.  Prior to the festival's twentieth anniversary in 2010, Álvarez met with
Rivera at a restaurant in San Juan and notified him that another artist would be designing
the artwork for the 2010 PRHJF.  Pl. SUF ¶¶ 11–12.  During this meeting, Rivera claims
he told Álvarez that he was fine with this change, but that they could no longer use any of
his prior artwork.  *Id.* ¶ 165; Docket No. 146-9.  Álvarez claims Rivera never made such
a statement.  Docket No. 133-1, at 2.

Although Méndez did not commission Rivera to produce a new piece for the 2010
festival, Méndez used at least six of Rivera's previous designs in a collage that was
placed on festival programs and commemorative merchandise sold during the 2010
festival.  Pl. SUF ¶ 116; Def. SUF ¶ 10.  Rivera did not explicitly authorize the creation
of this collage.  Pl. SUF ¶ 118.  Additionally, Rivera's artworks are still displayed on the
Méndez  &  Compañia  (www.mendezcopr.com)  and  PRHJF  websites
(www.prheinekenjazz.com).  Pl. SUF ¶ 17; Docket Nos. 133-3, 133-4.  On the Méndez

website, a page describes the history of the Heineken Jazz Fest and allows the user to scroll through year-by-year, to see the artwork from each annual event, including all twelve of Rivera's works.  Docket No. 133, Additional Fact ¶ 7.

Rivera registered all twelve artworks at issue with the U.S. Copyright Office on April 27, 2011.  Docket No. 120-4.  He brought suit against defendants in June 2011 for copyright infringement, seeking injunctive relief and damages.

### DISCUSSION

Plaintiff Rivera moves for summary judgment on his copyright infringement claim.  To prevail, a plaintiff must demonstrate an absence of a genuine issue of material fact as to: 1) ownership of copyright, and 2) defendants' infringement.  *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005) ("two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original").  Defendant Méndez argues that its use of Rivera's artwork is within the scope of implied licenses Rivera granted to Méndez each time an artwork was commissioned and delivered.  Méndez also asserts a fair use defense with respect to the display of Rivera's artwork on the Méndez & Compañia and PRHJF websites. Lastly, Méndez moves for partial summary judgment on Rivera's claim for damages.  Each issue will be discussed below in turn.

### I.       Copyright Infringement

To establish copyright infringement, a plaintiff must first demonstrate ownership of a valid copyright.  *Johnson*, 409 F.3d at 17; *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The burden of proving copyright ownership is borne by the plaintiff.  *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3, 5 (1st Cir. 1996). Registration with the U.S. Copyright Office within five years of the work's first publication is *prima facie* evidence of copyright ownership, and the burden shifts to the opposing party to demonstrate invalidity of the copyright.  17 U.S.C. § 410(c); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995).  Registration obtained after

five years benefits from no presumption, and the weight given to such a registration is within the discretion of the court.  17 U.S.C. § 410(c); *Brown v. Latin Am. Music Co., Inc.*, 498 F.3d 18, 23–24 (1st Cir. 2007).

In this case, Rivera registered all twelve artworks at issue on April 27, 2011.  *See* Docket No. 120-4.  The first publication date for these pieces range from 1998 to 2009.  *Id.*  Thus, the registrations are *prima facie* evidence of valid copyright ownership for only some of the artworks (those with a first publication date on or after April 27, 2006).  However, Méndez has produced no evidence to demonstrate why Rivera's claimed copyright is not valid, and in fact it admits that Rivera is the "copyright owner of the artworks" at issue.  SUF ¶ 9.  Accordingly, I find that Rivera has established ownership of valid copyright and has satisfied the first prong of his copyright infringement claim.  Summary judgment as to the issue of copyright ownership is granted.  *See* Fed. R. Civ. P. 56(g) (court may enter order finding any material fact not in dispute and "treating the fact as established in the case")

With respect to the second prong, a plaintiff must show "(a) that the defendant actually copied the work as a factual matter," and "(b) that the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'"  *Airframe Sys., Inc. v. L-3 Comms. Corp.*, 658 F.3d 100, 105–06 (1st Cir. 2011) (quoting *Situation Mgmt. Sys., Inc. v. ASP Consulting LLC*, 560 F.3d 53, 58 (1st Cir. 2009)) (further citations omitted).  Absent direct evidence of copying, actual copying may be inferred where "the alleged infringer had access to the copyrighted work" and "the offending and copyrighted works are so similar that the court may infer that there was factual copying (i.e., probative similarity)."  *Lotus Dev. Corp.*, 49 F.3d at 813.  The probative similarity inquiry "is somewhat akin to, but different than, the requirement of substantial similarity."  *Johnson*, 409 F.3d at 18.  Substantial similarity exists where "a reasonable, ordinary observer, upon examination of the two works, would 'conclude that the defendant unlawfully appropriated the plaintiff's protectable

expression.'"  *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 112 (1st Cir. 2006) (quoting *Johnson*, 409 F.3d at 18).  "Summary judgment on substantial similarity is 'unusual' but can be warranted on the right set of facts."  *T-Peg*, 459 F.3d at 112.

Rivera appears to claim at least two distinct sets of infringing activity: (1) use and display of his artwork in a collage that commemorates the twentieth anniversary of PRHJF, and (2) display of his artwork on the Méndez & Compañia and PRHJF websites. In both instances, there is compelling evidence of copying in-fact.  It is undisputed that Méndez had access to Rivera's artwork—in the form of the original, and in digital form. Def. SUF ¶ 7.  Méndez also admits to use and reproduction of Rivera's prior artwork to create the 2010 anniversary collage.  Pl. SUF ¶ 116; Def. SUF ¶ 10.  And the websites clearly reproduce and display substantial portions of the artworks at issue, such that they could not be reproduced without copying-in-fact. *See, e.g.*, Docket Nos. 133-3, 133-4.

However, Rivera falls short in establishing substantial similarity between the copyrighted works and the infringing works, as he appears to conflate the concepts of probative similarity with substantial similarity.  After noting defendants' access to his works and the "striking similarity" between the copyrighted works and the infringing works, Rivera asserts in a conclusory fashion that the substantial similarity inquiry is satisfied.  Pl. Mot. at 15–16.  Plaintiff does not provide details on how much of the artworks were copied and used in the allegedly infringing collage or the website.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  *United States v. Zannino*, 895 F.2d 1 (1st Cir. 1990).  Given this lack of argumentation, it cannot be said that a reasonable jury must find that the defendants unlawfully appropriated the plaintiff's protectable expression.  I find that Rivera has not met his burden of establishing the absence of a genuine issue of material fact with respect to substantial similarity.  Thus, plaintiff's motion for summary judgment as to infringement must be denied.

## II.    Implied License

Even assuming ownership of copyright and infringement, Méndez argues it is not liable because Rivera granted it an irrevocable, implied license to use, reproduce, and display the works.

Federal copyright law provides that a transfer of copyright ownership must generally be in writing and signed by the copyright owner.  17 U.S.C. § 204(a); *see Latin Am. Music Co. v. Archdiocese*, 499 F.3d 32, 42 (1st Cir. 2007).   However, this requirement does not apply to the grant of nonexclusive licenses.  *See* 17 U.S.C. § 101; *see also John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 40 (1st Cir. 2003).  The owner of a copyright may grant such nonexclusive licenses orally, or such licenses may be implied from conduct indicating the owner's intent to allow a licensee to use the work.  *Id.*  "Uses of a copyrighted work that stay within the bounds of an implied license do not infringe the copyright."  *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 41 (1st Cir. 2010).  The burden of proving the existence of such a license is on the licensee party claiming its protection.  *Id.*  Moreover, "implied licenses are found only in narrow circumstances."  *Id.*

"The touchstone for finding an implied license is intent."  *Id.* (internal quotations omitted).  The ultimate inquiry is "whether the totality of the parties' conduct indicates an intent to grant such permission."  *Id.* (internal quotations omitted).   In determining whether an implied license was granted, courts look to various factors, including: (1) "whether the licensee requested the work," (2) "whether the creator made and delivered that work," and (3) "whether the creator intended that the licensee would copy and make use of the work."  *Id.*

In this case, the evidence clearly indicates Rivera granted Méndez an implied license to use, reproduce, and display his artworks.  It is undisputed that Méndez, the licensee, requested Rivera to create the twelve artworks at issue.  Compl. ¶ 16–17. Accordingly, Rivera created and delivered the artworks to Méndez, with the intent that

Méndez would "reproduce, display, and distribute copies" of the works in marketing materials to promote each annual PRHJF.  Compl. ¶ 18.

The real dispute centers on the scope of the implied license—namely, its duration and extent.  Rivera claims he granted Méndez limited one-year licenses for each of the artworks, such that the licenses expired at the end of each annual PRHJF; and thus when Méndez used and reproduced Rivera's artwork at the 2010 PRHJF, it was infringing on his exclusive rights under federal copyright laws.  Docket No. 148, at 9–10.  In response, Méndez argues that the implied license was of indefinite duration and irrevocable. Docket No. 132, at 2.

Determining the scope of an implied license is an objective inquiry.  *Danielson*, 322 F.3d at 42.  The focus is not on the parties' subjective intent but their objective manifestation of it.  *Id.*  On the record before me, there exists a genuine issue of material fact as to whether the parties intended for the implied license to be of a limited or indefinite duration.  The record lacks evidence of statements or conduct that indicate whether Rivera intended for Méndez to be able to use his artwork beyond the year in which it was commissioned.  It is also unclear whether Méndez objectively manifested an intent to procure from Rivera a license to use the artworks for more than the year in which they were made.  The record so far only establishes that for each year starting 1998 through 2009, Méndez commissioned Rivera to create one artwork representing that year's festival.[2]  Both parties were aware and intended that the artwork be used to promote the event that year.  Beyond this base of agreement, it is difficult to say whether the parties had any other intended uses for the artworks.

---

[2] Méndez points out that it commissioned Rivera to create two works in 1999, because the musician originally scheduled (Chucho Valdés) was unable to attend.  Docket No. 133, Additional Facts ¶ 2.  The Chucho Valdés work was used in a subsequent year.  *Id.* ¶ 4.  This slight twist does not affect the court's calculus because it does not shed light on the parties' intent at the time of contracting for these works.

Méndez notes that Rivera was aware that the artwork would be used to brand each event, and the artwork would be used on PRHJF merchandise such as posters, t-shirts, coasters, CDs, that by their nature would be available for sale after the event (at least until the merchandise sold out).  It is true that such awareness would tend to show Rivera knew his artwork from prior years would still be available in the form of merchandise past the immediate festival.  But this awareness does not necessarily mean Rivera intended to allow Méndez to use the artworks indefinitely and create collages therefrom for future events.  Thus, there is a genuine issue of material fact which precludes summary judgment on this defense.

In a last ditch effort, Rivera contends that any implied license granted to Méndez was revoked upon the filing of this action.  Docket No. 148, at 10.  Méndez counters that the implied licenses at issue here are supported by consideration, and thus are irrevocable.[3]  Docket No. 132, at 6.  Rivera's claim that any implied license granted was terminated upon the filing of an infringement suit has been squarely rejected by other circuit courts.  *See, e.g.*, *Lulirama Ltd. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 882 (5th Cir. 1997).  Those same courts have held that implied licenses supported by consideration are irrevocable.  *See Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008); *Lulirama*, 128 F.3d at 882 ("[A] nonexclusive license supported by consideration is a contract").  In any event, a genuine question remains as to whether

---

[3] Méndez also asserts that termination of transfers of copyright must be made in writing pursuant to 17 U.S.C. § 203.  But that provision is inapplicable here as Rivera is not seeking to exercise his right of termination under § 203, but rather appears to be asserting an argument for termination under contract principles.  *See Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1297 (11th Cir. 1999) (noting that § 203 is not meant to convert casual oral licenses into thirty-five year "straitjacket[s]" and "if state law provides that licenses of indefinite duration may be terminated in less than 35 years, it is state law and not section 203 that governs the question of termination").

Méndez exceeded the scope of the implied license, and whether its conduct amounted to infringement of Rivera's exclusive rights.

**III.    Fair Use Defense**

Méndez also seeks a determination that its displays of Rivera's artwork on Méndez & Compañía and PRHJF's websites constitute fair use.  Docket No. 132, at 10.

"Fair use" is a defense that allows a court to avoid the rigid application of the Copyright Act when such application would stifle the very creativity the law was designed to foster.  *See Stewart v. Abend*, 495 U.S. 207, 236 (1990).  The "fair use" defense permits the use of copyrighted materials for certain purposes, including parody, criticism, comment, teaching, news reporting, or research.  *Campbell v. Acuff-Rose Music Co.*, 510 U.S. 569, 576–77 (1994).

Section 107 of the Copyright Act provides a list of non-exclusive factors that a court must ponder in determining whether an unauthorized use of a copyrighted work can be called "fair use," including "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit, educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of its use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107; *see Stewart*, 495 U.S. at 236–37; *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549 & 561 (1985).  No one factor is dispositive; all are to be explored and weighed together in light of the purposes of the Copyright Act.  *See Campbell*, 510 U.S. at 578.  Since fair use is an affirmative defense, defendants carry the burden of proof in demonstrating fair use.  *Id.* at 590.  Although fair use is a mixed question of law and fact, a district court may resolve fair use issues on summary judgment where there is no genuine issue of material fact relevant to the fair use determination.  *See Harper & Row*, 471 U.S. at 560-61.

### A.     Purpose and Character of Use

The first factor focuses upon whether the new work "merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579.  Other factors that may militate against a fair use finding decline in significance to the extent that a work is more transformative.  *Id.*

Here the use is somewhat transformative.  The purpose of the new use, in defendant's words, is "expository, archival" in nature.  The display of Rivera's works on the two websites is meant to be informational.  The artworks appear on both websites on pages that describe the history of the Heineken Jazz Fest.  For example, on the Méndez website, one page describes the history of the festival and allows the user to scroll through year-by-year to see the artwork from each annual PRHJF, including all of Rivera's works.  *See, e.g.*, Docket No. 133-4.  But this new use does not add anything to the works such that it creates a wholly "new expression, meaning, or message." *Campbell*, 510 U.S. at 579.  The websites do not alter the artworks in any significant way, except to resize them so that they fit on the webpage.  Moreover, the artworks were originally created to promote and represent that year's festival, and the reproduction of these works on the website also serve as a representation of these past events.  Thus, I find Méndez's new use only slightly transformative.  *Cf. Robinson v. Random House, Inc.*, 877 F. Supp. 830, 841 (S.D.N.Y. 1995) (finding new biographical use was not substantially transformative because when "the secondary use involves . . . an untransformed duplication of the original, it has little or no value that does not exist in the original work").

The fact that a use is commercial as opposed to nonprofit is a separate factor that tends to weigh against a fair use finding.  *Harper & Row*, 471 U.S. at 562.  "[E]very commercial use of copyrighted material is presumptively an unfair exploitation" of a

copyright owner's monopoly privilege.  *Id.*  "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price."  *Id.* (citations omitted).  The court also considers the propriety of defendants' conduct as part of the "character" of the use.  Fair use presupposes good faith and fair dealing.  *Id.* at 562–63.

The distinction between commercial versus nonprofit use is of limited importance here, but it could be said to weigh slightly against a finding of fair use.  Although PRHJF is an event intended to raise funds for students of the Berklee College of Music, the event sponsor, Méndez, is a corporation that stands to commercially benefit from use of Rivera's works to promote the jazz festival series and the Heineken brand itself.  Additionally, there is no evidence of bad faith on the part of Méndez in using Rivera's works on the two websites.  On balance, then, I find that there is a genuine issue as to whether the purpose and character of the use weighs in favor of or against a fair use finding.

## B.    Nature of the Copyrighted Work

The next factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied."  *Campbell*, 510 U.S. at 586.  Creative works of art are traditionally at the core of intended copyright protection, though the scope for fair use of published works is broader than that for unpublished works.  *Reyes v. Wyeth Pharm., Inc.*, 603 F. Supp. 2d 289, 298 (D.P.R. 2009) (citing *Bill Graham Archives v. Doring Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006).  However, the factor may be of limited usefulness where the creative work of art is being used for a transformative purpose.  *See Bill Graham Archives*, 448 F.3d at 612; *Campbell*, 510 U.S. at 586.

Here, the works at issue are creative works deserving of protection.  Although the works contain some informative elements, namely, references to the Heineken brand and the artist or artists performing that year, the works themselves are completely original creations by Rivera.  He enjoyed a great deal of artistic freedom (in color, design, and medium) when creating these works.  Pl. SUF ¶¶ 100–02, 104.  Given that the secondary use is only slightly transformative, this factor clearly weighs against a finding of fair use.

### C.       Amount and Substantiality of the Portion Used

The third factor focuses on whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying.  *Campbell*, 510 U.S. at 586 (citation and quotation omitted).  Copying an entire work usually weighs against a fair use finding, but courts have also found that copying the entirety of a work is sometimes necessary to make a fair use of it.  *Reyes*, 603 F. Supp. 2d at 299 (citations omitted); *Bill Graham Archives*, 448 F.3d at 613.  However, copying only an insubstantial portion of the entire work "in absolute terms" may not help the defendant if that portion constitutes the "heart" of the work.  *Harper & Row*, 471 U.S. at 564–65 (relatively few words quoted from unpublished manuscript, but passages used were among the most interesting and powerful in the book).  Thus the inquiry at the third factor must take into account that "the extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586–87.

This factor is relatively neutral in the instant analysis.  Méndez appears to concede that entire works or substantial portions of the artworks appear on the two websites.  Docket No. 132, at 13.  But the displays of entire works or substantial portions thereof appear to be necessary to effectuate the purpose of the secondary use, i.e. to memorialize and inform the reader of the past festivals.  The websites would not be as informative of PRHJF history if they displayed only insignificant portions of the artworks.  Thus, this factor does not weigh against a finding of fair use.

     **D.**      **Effect of the Use upon the Potential Market for the Works**

     Lastly, the court must evaluate "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.  This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer[s], but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original."  *Campbell*, 510 U.S. at 590 (punctuation and citation omitted).  This factor "must take account not only of harm to the original but also of harm to the market for derivative works."  *Id.* (quoting *Harper & Row*, 471 U.S. at 568).  That is, this factor focuses upon secondary uses of the copyrighted work that, "by offering a substitute for the original, usurp a market that properly belongs to the copyright holder."  *Reyes*, 603 F. Supp. 2d at 299 (citation and quotation omitted).  However, "a copyright holder cannot prevent others from entering fair use markets merely by developing or licensing a market for . . . transformative uses of its own creative work."  *Bill Graham Archives*, 448 F.3d at 614–15 (citation and quotation omitted).  "[C]opyright owners may not preempt exploitation of transformative markets."  *Id.* (citation and quotation omitted).  When "the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred."  *Campbell*, 510 U.S. at 591.

     Méndez contends that display of Rivera's works on its websites do not negatively affect the potential market for the works as there is no market for these works.  It is true that Méndez owns the originals, but that does not mean there is no market for Rivera's twelve works.  The originals could be sold in the future to other buyers, and there certainly may be a market for derivative works.  Because fair use is an affirmative defense, the burden is on defendants to demonstrate fair use, but it is difficult to carry this burden "without favorable evidence about relevant markets."  *Campbell*, 510 U.S. at 590.  Defendants have introduced no such evidence except to assert that their use does not

affect the market for plaintiff's works.   Such bald assertions are not evidence.    Thus, defendants have not carried their burden of proof on this factor.

In light of the foregoing,  I find defendants have failed to establish the absence of genuine issues of material fact compelling a finding of fair use.   However, defendants may present evidence in support of a fair use defense at trial.

## IV.      Summary Judgment as to Damages

Méndez also moves for partial summary judgment on the issue of damages. Méndez argues that Rivera's claim for damages should be dismissed as he has no evidence of actual damages and is ineligible to elect statutory damages.   Def. Mot. 3. Rivera points to his experts' reports as evidence of actual damages.

Section 504(b) of the Copyright Act provides that a prevailing plaintiff in an infringement suit may recover either (1) actual damages suffered by the copyright owner and any additional profits of the infringer attributable to the infringement, or (2) statutory damages pursuant to 17 U.S.C. § 504(c). Because Rivera failed to timely register his works, he is not entitled to seek statutory damages.  *See* 17 U.S.C. § 412(2) (statutory damages are unavailable where infringement occurs after first publication and before the effective date of registration).   Rivera also does not appear to seek recovery based on Méndez's profits attributable to the infringement.  *See* Docket No. 128, at 16.  Therefore, to survive summary judgment, Rivera must offer some proof of actual damages.   Actual damages consist of "all income and profits lost as a consequence of the infringement," *Bruce v. Weekly World News, Inc.*, 310 F.3d 25, 28 (1st Cir. 2002), and is generally measured by the amount that would have accrued to plaintiff but for the defendant's infringement, *see Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1171 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

In a situation where the plaintiff's losses are hard to quantify, and the infringer has not directly profited from the infringement, courts look to the value of the infringing use

(i.e. a hypothetical licensing fee) to determine damages.  *See, e.g.*, *Davis v. The Gap, Inc.*, 246 F.3d 152, 160–61, 172 (2d Cir. 2001).  The ultimate question is what a willing licensee would have been reasonably required to pay to a willing copyright licensor. *Real View, LLC. v. 20-20 Techs., Inc.*, 811 F. Supp. 2d 553, 557 (D. Mass. 2011). However, the fact that "the fair market value of a reasonable license fee may involve some uncertainty . . . is not sufficient reason to refuse to consider this as an eligible measure of actual damages."  *Davis*, 246 F.3d at 166.  Additionally, uncertainty should not preclude recovery, if the uncertainty is as to amount, not as to the fact that actual damages are attributable to the infringement.  *Real View*, 811 F. Supp. 2d at 558 (internal quotations and alterations omitted).  At bottom, the "amount of damages must not be speculative and must be grounded in objective evidence of what a buyer would reasonably have been charged for the particular use at issue."  *Id.* (internal quotations omitted).

Méndez, in its motion for partial summary judgment and an accompanying motion to strike (Docket No. 123), argues that Rivera's experts should be stricken under Rule 702 of the Federal Rules of Evidence.  Specifically, Méndez contends that neither expert is qualified and their opinions are based on flawed methodologies that are irrelevant to the issue of actual damages.  I need not reach a decision on that issue to resolve defendants' motion for partial summary judgment.  Although Rivera's method for computation of a hypothetical licensing fee may be problematic, a wholesale rejection of Rivera's claim for damages is inappropriate at this time.  Even assuming Rivera's expert testimony is inadmissible, Rivera still has some evidence of actual damages.  At the very least, the invoices from 1998 through 2009 suggest that the fair market value to use his artwork is a minimum of $4000.  The fact that the amount of a reasonable license fee is uncertain should not preclude recovery.  The issue here is the amount of actual damages, not whether there is evidence of actual damages.  *Davis*, 246 F.3d at 166.  The situation at bar is distinguished from *Iconbazaar, L.L.C. v. Am. Online, Inc.*, where the court

granted defendant's motion for summary judgment, because in that case, the plaintiff failed to offer any evidence to "quantify any license fee it thinks it might be due."  378 F. Supp. 2d 592, 594 (M.D.N.C. 2005).  Without any evidence, Iconbazaar offered "nothing more than mere speculation" as to the licensing fees it might be due.  378 F. Supp. 2d 592, 595 (M.D.N.C. 2005).

Similarly, the Fourth Circuit's recent decision in *Dash v. Mayweather*, wherein the court affirmed the district court's grant of summary judgment for defendants, provides no relief for Méndez.  731 F.3d 303 (4th Cir. 2013).  There, the court noted that the plaintiff, Dash, "failed to present any evidence—such as an affidavit or a prior contract—that he had ever sold, offered for sale, or licensed one of his beats" to defendants or anyone else. *Id* at 317.  Dash's only evidence to support his damages claim was an expert report that failed to clearly state the work had a fair market value.  *Id.*  From this, the court concluded that the expert's "omission of a clear statement of value suggests that he could not conclude, either with certainty or sound reasoning," that plaintiff would have been paid a licensing fee for use of his work.  *Id.*  The Fourth Circuit further noted that "evidence of a copyright holder's prior licensing or valuation of his work can provide sufficient support for his actual damages claim," *id.*, which is the precise situation the court is confronted with in this case.  Here, the invoices between Rivera and Méndez are evidence of the copyright holder's prior licensing and valuation of his work.  Rivera clearly has some evidence to support his actual damages claim.

In light of the above, Méndez's motion for partial summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED** on the issue of copyright ownership and **DENIED** as to infringement, and defendants' motion for partial summary judgment is **DENIED**.

Rivera v. Méndez & Compañia, Civil No. 11-1530 (BJM)                                    18

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of December, 2013.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge