IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**DENNIS MARIO RIVERA**,

    Plaintiff,

    v.

**MÉNDEZ & COMPAÑIA**, *et al.*,

    Defendants.

Civil No. 11-1530 (BJM)

## OPINION AND ORDER

In an amended complaint, Dennis Mario Rivera sued Méndez & Compañia ("Méndez"), HNK Americas, Luis Álvarez, Triple-S Propiedad, Inc. and others, alleging copyright infringement. Docket No. 83 ("Compl."). The parties have consented to proceed before a magistrate judge. Docket No. 107. Before the court is defendants' motion to strike and motion in limine to exclude plaintiff's experts pursuant to Rule 702 of the Federal Rules of Evidence. Docket Nos. 123, 167. Plaintiff opposed both motions. Docket Nos. 130, 171. Defendants filed a reply for the in limine motion. Docket No. 172. For the reasons that follow, defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.

Dennis Mario Rivera is a Puerto Rican artist. Sometime in 1998, Luis Álvarez, Vice President at Méndez & Compañia and Executive Producer of the Puerto Rico Heineken Jazz Fest ("PRHJF"), approached Rivera and commissioned him to create a visual design for the annual jazz festival. Over the next twelve years, Rivera created for Méndez & Compañia twelve artworks that served as the official posters for each annual PRHJF. Each year, Rivera sold Méndez the original artwork for $5000, and charged $4000 for "logo design." Sometime prior to the 2010 festival, Rivera and Álvarez's friendship deteriorated. And in 2010, Rivera was informed by Álvarez that his services would not be needed, and another artist would be designing the artwork for the 2010 PRHJF. During this meeting, Rivera claims he told Álvarez that they could no longer use

his artwork. Without seeking permission from Rivera, Méndez created a collage using at least six of Rivera's previous artworks, and placed the collage on posters, programs, and commemorative merchandise for the 2010 festival. Additionally, all twelve of Rivera's artworks are displayed on the Méndez & Compañia (www.mendezcopr.com) and PRHJF websites (www.prheinekenjazz.com). Rivera subsequently brought suit against Méndez, Álvarez, and others, alleging copyright infringement.

Méndez moves to exclude experts Félix Norman Román and Dr. Rubén Alejandro Moreira on the grounds that neither are qualified, and their opinions are based on flawed methodologies that are irrelevant to the issue of actual damages. Docket No. 123, at 11–14. In Rivera's opposition to the motion in limine, he claims Román and Moreira will render an opinion "as to the value of a license for derivative works," and Moreira will provide testimony on the similarities between the copyrighted works and infringing works.

District court judges act as gatekeepers in ensuring that all expert testimony admitted at trial is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (extending *Daubert* to all expert testimony). Under *Daubert*, courts are required to engage in a flexible inquiry to determine the admissibility of expert testimony. *See id.* at 594–95. The court does not have to follow any particular procedure in resolving a challenge brought under *Daubert*. *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002). Rule 702 codified *Daubert* and progeny, and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The First Circuit has interpreted Rule 702 to require courts to evaluate the admissibility of expert testimony under a three part test: (1) the court "must determine whether the putative expert is qualified by knowledge, skill, experience, training, or education," (2) "it inquires whether the proffered testimony concerns scientific, technical, or other specialized knowledge," and (3) "it must perform its gatekeeping function, by assessing whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 259 (1st Cir. 1997) (internal quotations and citations omitted). The ultimate inquiry is "whether the proposed testimony, including the *methodology* employed by the witness in arriving at the proffered opinion, rests on a *reliable foundation* and is *relevant* to the facts of the case." *Id.* (emphasis in original).

I will first address Méndez's objections as to the experts' qualifications. In February 2013, Rivera produced a "Report on Intellectual Property Infringement Damages" authored by Román, that incorporates as Appendix O, a report by Moreira dated October 28, 2012. *See* Román Report; Docket No. 123-11 ("Moreira Report"). Román is a Certified Public Accountant and a Certified Forensic Accountant, with experience serving as an expert witness in at least five copyright cases. Docket No. 131-8. His experience in artwork valuation stems from serving as another artist's accountant for almost 18 years. Docket No. 131-9. Moreira is an Art Professor at the University of Puerto Rico in Humacao, Puerto Rico, and has served as an expert witness in another art-related case. Docket Nos. 131-11; 147-2. He is not certified by any recognized U.S. association of appraisers, but is familiar with the standards of appraisal from those associations, and has appraised up to 50 pieces of art. Docket No. 147-3, at 2–5. I find Román and Moreira are sufficiently qualified by experience and education to testify regarding the amount of a hypothetical license fee for use of Rivera's artwork.

I now turn to the reliability and relevance of the proffered expert testimony. In its role as gatekeeper, the court is limited to determining whether expert testimony is

relevant to an issue in the case, and whether the methodology underlying that testimony is sound.  *See Kumho Tire*, 526 U.S. at 149.  A party proffering expert testimony is not required to convince the court that the expert's assessment of the situation is correct, but rather, as long as the expert's testimony rests on "good grounds . . . it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies."  *Ruíz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) (internal quotations and citations omitted).  With respect to relevance, expert testimony must be relevant not only in the general sense under Rule 402, "but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue."  *Id.* at 81.

Section 504(b) of the Copyright Act provides that a prevailing plaintiff in an infringement suit may recover either (1) actual damages suffered by the copyright owner and any additional profits of the infringer attributable to the infringement, or (2) statutory damages pursuant to 17 U.S.C. § 504(c).  Because Rivera failed to timely register his works, he is not entitled to seek statutory damages.  *See* 17 U.S.C. § 412(2) (statutory damages are unavailable where infringement occurs after first publication and before the effective date of registration).  Rivera also appears to concede Méndez made no profits from the infringing use.  *See* Docket No. 130, at 14.  Therefore, plaintiff is left with a claim of actual damages.  Actual damages consist of "all income and profits lost as a consequence of the infringement," *Bruce v. Weekly World News, Inc.*, 310 F.3d 25, 28 (1st Cir. 2002), and is generally measured by the amount that would have accrued to plaintiff but for the defendant's infringement, *see Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1171 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

In the joint proposed pretrial memorandum (Docket No. 160), plaintiff appears to advance a theory of damages that is unsupported as a matter of law.  Rivera claims he is

entitled to recover the value of each artwork infringed ($50,000 to $60,000), and on top of that, a separate licensing fee for defendants to create derivative works. Docket No. 160, at 32. On this point, Rivera simply claims he would have billed a minimum of $350,000 "to license derivative works promoting Heineken Beer," and a minimum of $500,000 "to license derivative works to be placed on the packaging of 6-packs of beer." Pl. SUF. ¶¶ 162–63. But this theory of damages is incorrect.

In a situation where the plaintiff's losses are hard to quantify, and the infringer has not directly profited from the infringement, courts look to the value of the infringing use (i.e. a hypothetical licensing fee) to determine damages. *See, e.g.*, *Davis v. The Gap, Inc.*, 246 F.3d 152, 160–61, 172 (2d Cir. 2001). In the context of determining a hypothetical license fee, the inquiry is what a willing licensee would have been reasonably required to pay to a willing copyright licensor. *Real View, LLC. v. 20-20 Techs., Inc.*, 811 F. Supp. 2d 553, 557 (D. Mass. 2011). The hypothetical does not focus on the subjective willingness or valuations of the parties, but rather the objective fair market value of the use. *See Davis*, 246 F.3d at 166. Benchmark transactions, i.e. comparable licenses of the copyrighted work, are appropriate starting points. *Cf. Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004) (affirming an actual damages award based on the copyright holder's actual price quote to the infringer). Benchmark licenses, i.e. comparable licenses of comparable work, may also be considered. *See Dash v. Mayweather*, 731 F.3d 303, 319 (4th Cir. 2013). Moreover, the hypothetical fee is to be determined from a pre-infringement perspective. *Semerdjian v. McDougal Littell*, 641 F. Supp. 2d 233, 239 (S.D.N.Y. 2009). At bottom, the "amount of damages must not be speculative and must be grounded in objective evidence of what a buyer would reasonably have been charged for the particular use at issue." *Real View*, 811 F. Supp. 2d at 558 (internal quotations omitted).

Each Rivera original was sold to Méndez for $5000 at the time of their creation (docket no. 125, ¶7), and thus the value of these originals cannot figure into Rivera's

claim for damages. Rivera's claim is one of copyright, not of conversion or theft. His claim for damages must be based on the loss of value in his copyright, not in the original artworks themselves. However, in accordance with Rivera's theory of damages, Román's expert report concluded that the actual damages suffered by plaintiff Rivera range between $600,000 to $720,000. Román Report, at 12. This figure was based on Moreira's valuation of the *original* artworks, which he deemed have a fair market value of $50,000 to $60,000 each (notwithstanding the fact that Rivera in fact sold them to Méndez for much less). *See* Moreira Report. Moreira based his valuation on two invoices and another appraisal report. Def. SUF ¶ 18. The two invoices were for sales of artwork to local municipalities. *Id.* ¶ 20. One piece sold for $35,000 and the other for $20,000. *See* Moreira Report. The appraisal report valued a triptych created by Rivera at $150,000. Moreira noted that each part of the triptych was the same size as one PRHJF artwork. *Id.* From these data points, Moreira concluded that each piece Rivera created for PRHJF was valued at $50,000 to $60,000. Román took these figures, multiplied it by twelve (the number of works allegedly infringed) to reach the $600,000 to $720,000 range for actual damages. Román Report, at 6. Román's report states that there are "fifteen additional derivative works" that were not included in the damages calculation. *Id.*

      Putting aside Román's methodology for the moment, the main flaw with Rivera's damages calculation is Moreira's underlying valuation of Rivera's works. Moreira's expert report is highly problematic as his methodology provides a valuation of Rivera's original artworks, not a valuation of a hypothetical license fee to use, reproduce, and display those works. Docket No. 146-7, at 8. The evidence Moreira considered consisted of two invoices for the sale of Rivera's works, and an appraisal report for a third piece. From three data points—$35,000, $20,000, and $50,000—he concludes that the fair market value of Rivera's works ranges between $50,000 to $60,000. Moreira fails to explain how two sale prices and an appraisal value of Rivera's original works equate to a

hypothetical license fee to use, reproduce, and display his works at a festival such as the PRHJF.  Additionally, it does not appear that Moreira looked to any evidence of comparable licensing transactions (of Rivera's works or comparable works of other artists).  In the end, Moreira's methodology results in a valuation that is either unreliable or completely irrelevant to the inquiry at issue, because Rivera has the burden of showing actual damages in the form of a hypothetical license fee, not a hypothetical sale price.

Méndez also challenges Román's report on the basis that he inappropriately assumed all twelve works were infringed upon, and his calculation was based on Moreira's valuation.  Román's reliance on Moreira's valuation is problematic, as discussed above.  However, his assumption that all twelve works were infringed upon does not render his opinion unreliable.  Whether or not all twelve works were used in a manner that constitutes copyright infringement is a genuine issue of fact to be determined at trial.  *See* Docket No. 169 (opinion and order denying plaintiff's motion for summary judgment).  Because this assumption had some factual basis, namely, that all twelve works are displayed on Méndez's websites, I find this aspect of his methodology unproblematic.

In sum, I find that Moreira's methodology does not establish a proper foundation from which he can offer relevant testimony regarding actual damages suffered by Rivera.  Accordingly, Moreira's testimony on the value of Rivera's works, and Román's testimony, to the extent it relies on Moreira's findings, must be excluded under Rule 702.

Finally, Méndez also seeks to strike Moreira's testimony as to substantial similarity.  However, the parties have submitted only two of the expert's thirty-page report, and I therefore cannot conclude at this time whether the expert rendered an opinion on substantial similarity.  Hence, Méndez's request to exclude Moreira's testimony on substantial similarity is **DENIED WITHOUT PREJUDICE**.  Defendants may raise the objection during trial should the expert's testimony exceed the scope of his

Rivera v. Méndez & Compañia, Civil No. 11-1530 (BJM)                                                                               8

report.  Fed. R. Civ. P. 37(c)(1) (failure to provide expert's opinions in a written report pursuant to Rule 26(a) mandates exclusion of such testimony at trial).

For the foregoing reasons, defendants' motions to exclude plaintiff's experts are **GRANTED** as to Moreira's opinion on actual damages suffered by Rivera, and **GRANTED** as to Román's opinion on actual damages, to the extent it relies on Moreira's findings.  Méndez's request to exclude Moreira's testimony regarding substantial similarity is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 16th day of December, 2013.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge